*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ABDULLAH/SCOTT, Minors.

UNPUBLISHED
September 29, 2022

No. 359783
Wayne Circuit Court
Family Division
LC No. 2020-000162-NA

In re SCOTT, Minors.

No. 359784
Wayne Circuit Court
Family Division
LC No. 2020-000162-NA

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

In Docket No. 359783, respondent-mother appeals by right the trial court's order terminating her parental rights to her six children: MOA, MIA, MLA, RRS, MMS, and PES. In Docket No. 359784, respondent-father appeals by right the court's order terminating his parental rights to his three children: RRS, MMS, and PES.[1] The trial court terminated the parental rights of both respondents under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). We affirm.

## I. FACTUAL BACKGROUND

Respondent-mother has given birth to six children. Her three oldest children, MOA, MIA, and MLA, were not fathered by respondent-father.[2] The three youngest children, RRS, MMS, and

---

[1] This Court consolidated the appeals. *In re Abdullah/Scott Minors*; *In re Scott Minors,* unpublished order of the Court of Appeals, entered January 11, 2022 (Docket Nos. 359783 and 359784).

[2] Although the father of MOA, MIA, and MLA was named as a respondent, the trial court declined to terminate his parental rights, and he is not a party to this appeal.

PES, were fathered by respondent-father. Between 2014 and 2019, Children's Protective Services (CPS) investigated the family several times for complaints of abuse, neglect, improper supervision, and domestic violence. At least two complaints against respondents were substantiated. During these earlier years, respondent-mother placed several of the children in the care of others for extended periods.

In January 2020, MOA and MIA were living with an aunt who was contemplating taking them into her care on a more permanent basis. MLA, RRS, and MMS were in respondents' care, and respondent-mother was pregnant with PES. Respondents and the three children were living in a trailer parked on property owned by the paternal grandmother. Although the trailer was located near the paternal grandmother's house, which by all accounts was large and appropriate, the trailer was in a deplorable condition and lacked the most basic necessities, including electricity and running water.

In January 2020, a family friend, concerned about MLA's well-being, called the police requesting a welfare check. The police arrived at the property and observed the appalling condition of the trailer and signs of abuse and neglect of the children. A CPS investigation that followed revealed that at least one of the children, MLA, had been physically abused. On January 25, 2020, respondents were arrested and criminally charged with child abuse and torture. During an interview on January 28, 2020, respondent-father denied beating MLA and stated that respondent-mother had tied MLA up because he had "done something to [RRS] and [MMS]." Respondent-mother admitted that MLA had been tied up twice. But she did not admit to doing so herself, nor did she implicate respondent-father.

On February 5, 2020, petitioner, the Department of Health and Human Services (DHHS), filed an original petition seeking termination of respondents' parental rights to the five oldest children at the initial disposition. After PES's birth a few months later, DHHS amended the petition to include the newborn child. Hearings on the amended petition were held in September and October 2021. At the conclusion of the hearings, the court initially found that the children came within its jurisdiction on the basis of the conduct of both respondents. It then found that there existed clear and convincing evidence to terminate respondents' parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). Thereafter, the court held that a preponderance of the evidence established that termination of respondents' parental rights was in the children's best interests. Respondents now appeal.

## II. ANALYSIS

On appeal, both respondents expressly concede the existence of statutory grounds for termination under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). They only challenge the trial court's finding that termination of their parental rights was in the children's best interests.

Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's findings regarding a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification

of the child with the parent not be made." MCL 712A.19b(5). In *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020), this Court observed:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

Also, a child's placement with relatives weighs against termination and thus constitutes "a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine [a child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

The trial court did not clearly err by finding that termination of respondents' parental rights was in the children's best interests. First, there was overwhelming evidence that the children would be at risk of harm in respondents' care. At the time of termination, the six children were in the age range of 18 months to 11 years old. The evidence clearly established that respondents were unable to care for their six children, three of whom have special needs. There was overwhelming evidence that respondent-father physically and emotionally abused and tortured respondent-mother's six-year-old son, MLA, by binding his wrists and ankles with zip ties, leaving him diapered in a trailer, and beating him with a stick and belt. This abuse occurred in front of respondent-father's own daughters, RRS and MMS. Further, the family's CPS history included a substantiated complaint that respondent-father had previously physically abused respondent-mother's two oldest sons, MOA and MIA. Additionally, there was compelling evidence that respondent-mother participated in the severe mistreatment or at the very least failed to protect the children from respondent-father's physical and emotional abuse. Given this evidence, the trial court did not clearly err when it concluded that the children would be at risk of harm in respondents' care.

In addition to the physical and emotional abuse of the children, there was evidence that respondents could not provide the children with stability, permanence, or a safe home environment. Over the years, respondent-mother routinely left her children in the care of others because she was unable to maintain suitable housing, employment, and stability. Then, respondents jointly allowed three of the children to live in complete and utter squalor in a trailer that lacked basic necessities, including electricity and running water. Two of the children were forced to urinate and defecate either outside or in a bucket. The trial court did not clearly err when it found that respondents could not provide for the children's most basic needs.

By contrast, two relative caregivers were providing for all of the children's needs, and the children were thriving in their care. In particular, MLA, who had been described as thin, gained weight, mostly likely from his being in a healthier home environment where he was properly fed. Not only were the children's physical needs being met, the maternal grandmother was also ensuring that the three oldest children, MOA, MIA, and MLA, were receiving services that they needed to address their emotional, educational, and behavioral issues. All three boys were diagnosed with attention deficit hyperactivity disorder and post-traumatic stress disorder, and MLA, the most traumatized, was suffering from a mood disorder as well. They were in therapy to address the trauma they had experienced and to learn coping skills and behavior management.

There was also evidence that the relative caregivers were facilitating the sibling relationships. PES, 18 months old at the time of termination, had been placed with his paternal aunt since birth. Placement with this individual was the only home that PES had ever known. Moreover, because of the amicable relationship between the two caregivers, the siblings visited weekly and this was likely to continue into the future. As part of a best-interest determination, it is permissible for a court to consider sibling relationships. See *In re Olive/Metts Minors*, 297 Mich App at 42. Considering respondents' history of instability, it is apparent that they would not have the capacity to attend to the children's physical, emotional, and familial needs should the children be returned to their care. Moreover, both caregivers had expressed a willingness to adopt the children or child in their care should respondents' parental rights be terminated. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Mota*, 334 Mich App at 321. In this case, placement with relatives who were providing for the children's needs and willing to adopt the children weighed in favor of terminating respondents' parental rights.

A review of the record confirms that the trial court considered permissible factors and properly concluded that, on balance, the factors weighed in favor of terminating respondents' parental rights. Notwithstanding this conclusion, respondents' challenge the trial court's findings on several fronts. We find respondents' arguments to be without merit.

Respondent-father argues that the evidence was insufficient to support the trial court's conclusion that termination of parental rights was in the children's best interests because no expert testimony was presented. Respondent-father does not identify the nature of the expert testimony that he believes should have been presented. Moreover, he has not cited any authority in support of his position that expert testimony was required. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [his] claims, or unravel and elaborate for [him his] argument, and then search for authority either to sustain or reject [his] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks and citation omitted). In any event, respondent-father's argument fails because petitioner was not required to present expert testimony. Whether termination of parental rights is in a child's best interests need only be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. The trial court should weigh all the evidence available in determining a child's best interests. *In re Trejo,* 462 Mich 341, 353-354; 612 NW2d 407 (2000). A review of the record confirms that the court considered and properly weighed all of the evidence presented before concluding that termination of respondents' parental rights was in the children's best interests.

Both respondents assert that the trial court did not give appropriate weight to the fact that all six children were in relative placement. We disagree. "Indeed, a child's placement with relatives weighs against termination . . . ." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). But while the fact that a child is living with a relative must be considered, a trial court may still terminate parental rights in lieu of placement with a relative if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court specifically considered that five of the children were placed with the maternal grandmother and that the youngest, PES, was living with a paternal aunt. The court concluded, however, that despite these relative placements, termination of respondents' parental rights would still be in the children's best interests. The court considered the physical and emotional injuries that respondents had directly and indirectly inflicted on each of the children. It then found that termination of parental rights would be the only way to insure that respondents had limited or no contact with the children in the future and no ability to interfere with their upbringing. Accordingly, the trial court considered relative placement and gave it the appropriate weight under the circumstances.

Both respondents argue that they demonstrated or, if given the chance, would have demonstrated their ability to parent their children. Respondent-mother notes that when she attended parenting time with MOA and MIA, the visits went well and she engaged them in an appropriate manner. She also relies on the maternal grandmother's opinion that respondent-mother might someday be able to properly parent the children. Respondent-father asserts, incredibly, that there was no evidence that he lacked the skills necessary to parent his children. Both respondents have chosen to ignore the egregious abuse of MLA, the emotional damage to the children who witnessed respondents' actions, the earlier abuse of MOA and MIA, and each parent's inability to protect their children from injury. Further, when given the opportunity, neither respondent participated in parenting time with PES. These actions do not demonstrate that respondents have the skills necessary to provide a safe and stable home for their children. Indeed, under these circumstances it is highly doubtful that respondents, even if offered a treatment plan, could ever be trusted to properly parent a child. Contrary to respondents' assertions, there was no evidence from which the court could have concluded that respondents would likely possess the skills necessary to safely parent their children.

Respondent-mother argues that the trial court erred by failing to consider the needs of each child individually. Again, we disagree. When determining the children's best interests, a trial court must consider each child separately. *In re Olive/Metts*, 297 Mich App at 42. A trial court need not, however, make "individual" and "redundant factual findings" if the children's interests do not significantly differ. *In re White*, 303 Mich App at 715-716. On appeal, respondent-mother does not explain how the children's best interests diverged. It would be difficult to do so. While there was a 10-year age difference between the oldest and the youngest child, their needs were aligned. They all required safety and stability, and they were all at an age where they would benefit from a home environment that would ensure that their safety and needs were met. Furthermore, any differences, such as the fact that three of the children had special educational and mental health needs, actually weighed in favor of terminating respondent-mother's parental rights. This is borne out by a review of the testimony from the maternal grandmother. She testified that respondent-mother was not capable of caring for her six children. The maternal grandmother was particularly concerned with respondent-mother's inability to meet the needs of the three children with behavioral and emotional issues. Thus, even if the court were to have specifically considered the

one feature that separated the three older children from their younger siblings, consideration of this factor weighed in favor of termination. Accordingly, we find no merit to respondent-mother's assertion that the trial court failed to consider the needs of each child separately.

Respondent-father asserts that he should have been given an opportunity to participate in services and work toward reunification. In particular, he argues that he should have been granted parenting time with his daughters, RRS and MMS. Respondent-father ignores that he was denied parenting time with RRS and MMS because they were directly victimized by his abuse of MLA. Further contact with respondent-father could have contributed to additional trauma. Moreover, RRS was a potential witness in the criminal matter. For these reasons, respondent-father was not permitted to visit with his two daughters. But even if respondent-father had been granted parenting time, there is no indication that it would have affected the outcome. Significantly, respondent-father was offered 62 visits with his son, PES, but he did not attend any. Thus, it is unlikely that had he been granted parenting time with RRS and MMS, he would have taken advantage of the opportunity in any meaningful way.

In any event, reasonable efforts toward reunification were not required under the circumstances in this case. In general, reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances. *In re Mason*, 486 Mich at 152. Absent aggravating circumstances, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "Reasonable efforts to reunify the child and family must be made in all cases," but not when "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of . . . MCL 722.638." MCL 712A.19a(2)(a). And MCL 722.638(1)(a) provides that aggravated circumstances exist when a parent "has abused the child . . . and the abuse included 1 or more of the following":

> (*i*) Abandonment of a young child.

> (*ii*) criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

> *(iii) Battering, torture, or other severe physical abuse*.

> (*iv*) Loss or serious impairment of an organ or limb.

> (*v*) Life threatening injury.

> (*vi*) Murder or attempted murder. [Emphasis added.]

In this case, the trial court did not clearly err by finding that respondents' binding of MLA's wrists and ankles with zip ties, beating him with a belt and stick, leaving him in a cold trailer, and exposing two other children to this egregious abuse, constituted battering and torture. Accordingly, DHHS was not required to make reasonable efforts toward reunification.

Lastly, respondent-father asserts that the trial court's best-interest determination was flawed because it failed to consider a guardianship as an alternative to termination of his parental rights and adoption. We disagree.

Typically, the appointment of a guardian is an effort to avoid termination of parental rights. *In re TK,* 306 Mich App at 705. "[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *Id.* at 707. But under any circumstance, a trial court may only appoint a guardian if "it is in the child's best interests to appoint a guardian." *Id.* (citations omitted). A guardianship may be appropriate when "an ongoing relationship with [the parent]—rather than termination—is in the children's best interests." *In re Mason*, 486 Mich at 169. "[W]hile the guardian assumes the legal duties of a parent . . ., the parent is still under many circumstances permitted to maintain a relationship with the child." *In re TK,* 306 Mich App at 705.

In this case, there was evidence that over the years, three of the children were voluntarily placed in guardianships with relatives and fictive kin. The trial court was fully aware of this fact. Clearly, the court rejected the possibility of a guardianship or indefinite relative placement because it found more compelling the children's needs for stability, permanency, and finality. The trial court also found that any contact with respondents would be detrimental to the children's well-being. Accordingly, it concluded that termination of respondents' parental rights was the best avenue by which to preclude respondents from having any contact with the children in the future. Implementing a guardianship with the relative caregivers in lieu of terminating respondents' rights was not a viable option in this case.[3]

Considering the totality of the record, the trial court did not clearly err by finding that termination of respondents' parental rights was the only means by which to ensure that the children's needs would be met and that they would achieve stability and finality. Accordingly, the court did not clearly err by finding that a preponderance of the evidence established that termination of respondents' parental rights was in the children's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel

---

[3] Respondent-father relies on *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019), to suggest that the trial court erred by not considering a guardianship. In that case, our Supreme Court denied the respondent-parent's application for leave to appeal, but it vacated "that part of the judgment of the Court of Appeals addressing the trial court's best-interest determinations," remanding the case to the trial court "for reconsideration of whether terminating respondent's parental rights is in the best interests of each child." The Supreme Court faulted the petitioner for not considering a guardianship for the children "because of a purported departmental policy against recommending guardianship for children under the age of 10." *Id.* The Court concluded that "such a generalized policy is inappropriate" because it is not supported by any statutory language. *Id.* There is nothing in the record in this case to suggest that DHHS or the trial court relied on a generalized policy against guardianships when rejecting a guardianship option in this case.